[Cite as *State v. Gilbert*, 2020-Ohio-1568.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SHELBY COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    v.

TOBY GILBERT,

    DEFENDANT-APPELLANT.

CASE NO. 17-19-12

O P I N I O N

Appeal from Shelby County Common Pleas Court
Trial Court No. 19CR000114

**Judgment Affirmed**

**Date of Decision:  April 20, 2020**

APPEARANCES:

    *Jim R. Gudgel* **for Appellant**

    *Timothy S. Sell* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Toby Gilbert ("Gilbert") appeals the judgment of the Shelby County Court of Common Pleas, alleging that his conviction is against the manifest weight of the evidence and that he was denied his right to the effective assistance of counsel. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} On May 22, 2018, Officer Aaron Wesbecher ("Officer Wesbecher"), who is employed at the Sidney Police Department, met with J.B., who was a confidential informant, to set up a controlled buy of illegal narcotics. Tr. 85-86, 94. Officer Wesbecher searched J.B. before providing her with $50.00 in cash and outfitting her with a recording device. Tr. 94, 99-100, 118. J.B. then drove to Gilbert's house and went inside for "a few minutes." Tr. 95. After J.B. exited Gilbert's house, J.B. rendezvoused with the police and gave the police officers a white powder that she had purchased. Tr. 96. Subsequent testing revealed that this white powder was composed of approximately 0.28 grams of cocaine. Ex. 4. Tr. 101, 103.

{¶3} The practice of the Sidney Police Department is to disclose the identity of a confidential informant seven days before a jury trial. Tr. 89. Gilbert's initial jury trial date was set for April 9, 2019. Tr. 105. On April 2, 2019, the State disclosed J.B.'s identity to the Defense. Tr. 105. On April 3, 2019, Gilbert called

J.B. Tr. 122. J.B. testified that Gilbert told her that he was "f***ing p***ed off" at her. Tr. 123. She stated that he also said that "he had lost everything" and that he believed that this was her fault. Tr. 123. J.B. further said "that [Gilbert] was very angry and [said] that I would get what was coming to me and that he was coming to Greenville." At the time of this call, J.B. lived in Greenville. Tr. 123.

{¶4} On April 25, 2019, Gilbert was indicted on one count of intimidating a witness in a criminal case in violation of R.C. 2921.04(B)(2) and re-indicted on one count of trafficking in drugs in violation of R.C. 2925.03(A)(1). Doc. 1. A jury trial was held on June 25, 2019. Tr. 1. On the day of the trial, the jury returned verdicts of guilty on both of the charges against Gilbert. Doc. 52, 53. The trial court then sentenced Gilbert on August 22, 2019. Doc. 76.

{¶5} The appellant filed his notice of appeal on September 17, 2019. Doc. 87. On appeal, Gilbert raises the following assignments of error:

**First Assignment of Error**

**The jury verdict was against the manifest weight of the evidence.**

**Second Assignment of Error**

**The Defendant was denied effective assistance of counsel due to the lack of assertion of a speedy trial violation.**

*First Assignment of Error*

{¶6} Gilbert argues that his conviction for witness intimidation is against the manifest weight of the evidence because he never made a specific threat against J.B.

Legal Standard

**{¶7}** "In a manifest weight analysis, 'an appellate court's function * * * is to determine whether the greater amount of credible evidence supports the verdict.'" *State v. Harvey*, 3d Dist. Marion No. 9-19-34, 2020-Ohio-329, ¶ 12, quoting *State v. Plott*, 2017-Ohio-38, 80 N.E.3d 1108, ¶ 73 (3d Dist.).  Thus, "the appellate court sits as a 'thirteenth juror' * * *."  *State v. Davis*, 3d Dist. Seneca No. 13-16-30, 2017-Ohio-2916, ¶ 17, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).  Appellate courts

> **must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'**

*State v. Brentlinger*, 2017-Ohio-2588, 90 N.E.3d 200, ¶ 36 (3d Dist.), quoting *Thompkins* at 387.

**{¶8}** "A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses."  *State v. Sullivan*, 2017-Ohio-8937, 102 N.E.3d 86, ¶ 38 (3d Dist.), quoting *State v. Coleman*, 3d Dist. Allen No. 1-13-53, 2014-Ohio-5320, ¶ 7. "[I]t is well established that the * * * credibility of the witnesses [is] primarily a matter for the trier of fact."  *State v. Gervin*, 2016-Ohio-8399, 79 N.E.3d 59, ¶ 142 (3d Dist.), quoting *State v. Clark*, 101 Ohio App.3d 389, 409, 655 N.E.2d 795 (8th Dist. 1995).

"Only in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Little*, 2016-Ohio-8398, 78 N.E.3d 323, ¶ 27 (3d Dist.), quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119.

**{¶9}** In order to establish the elements of the crime of witness intimidation in violation of R.C. 2921.04(B)(2), the State must prove that the defendant "[1] knowingly [2] and by force or by unlawful threat of harm to any person or property or by unlawful threat to commit any offense or calumny against any person * * * [3] attempt[ed] [4] to influence, intimidate, or hinder * * * [5] [a] witness to a criminal or delinquent act by reason of the person being a witness to that act[.]" R.C. 2921.04(B)(2).

**{¶10}** "The term 'threat' represents a range of statements or conduct intended to impart a feeling of apprehension in the victim, whether of bodily harm, property destruction, or lawful harm, such as exposing the victim's own misconduct." *State v. Cress*, 112 Ohio St.3d 72, 2006-Ohio-6501, 858 N.E.2d 341, ¶ 39. "'Intimidation' by definition involves the creation of fear in a victim, and the very nature of a threat is the creation of fear of negative consequences for the purpose of influencing behavior." *Id.* at ¶ 40. Thus,

> **[a] witness threatened with perfectly legal conduct ('I will tell your spouse about our affair') may be more intimidated than a witness threatened with illegal conduct ('I will knock down your mailbox'). The most intimidating threat of all may be an indefinite one ('You'll be sorry').**

*Cress* at ¶ 37. Under R.C. 2921.04(B), "the threat itself, not the threatened conduct, must be unlawful." *State v. Yambrisak*, 5th Dist. Richland No. 2012-CA-50, 2013-Ohio-1406, ¶ 31. "Moreover, the perpetrator need not have expressly detailed what exact harm he is threatening. The context for the words at issue is important to ascertain whether an unlawful threat of harm was made." *State v. Thompson*, 7th Dist. Columbiana No. 13 CO 20, 2014-Ohio-1225, ¶ 19.

Legal Analysis

**{¶11}** On appeal, Gilbert argues that he did not make threats against J.B. because he only made general statements and did not make any specific threats. Thus, our analysis will be limited to whether Gilbert's statements to J.B. constituted a threat. In this case, Officer Wesbech testified that the State's practice in Shelby County was to release the name of a confidential informant to the Defense seven days before the corresponding jury trial was scheduled. Tr. 89. Officer Wesbech then testified that Gilbert's trial on the charge of trafficking in drugs was originally scheduled for April 9, 2019 and that J.B.'s name was, therefore, released to the Defense on April 2, 2019. Tr. 105. Ex. 4, 5.

**{¶12}** J.B. testified that, on the day after her identity had been disclosed to the Defense, Gilbert called her. Tr. 122. The State introduced a screenshot taken on J.B.'s cell phone that indicated she received a call from Gilbert's number at 6:13 P.M. on April 3, 2019. Ex. 6. Tr. 124. J.B. testified that Gilbert "[s]tated that he

was very angry" and that he was "f***ing p***ed off." Tr. 123. J.B. also stated that Gilbert told her that "he had lost everything, that he was losing his home, his job, and everything, and that he considered that to be my fault and that he was very angry and that I would get what was coming to me and that he was coming to Greenville." Tr. 123. J.B. testified that she, at the time of this phone call, lived "right outside of Greenville." Tr. 123. J.B. then testified that Gilbert's tone of voice "was intimidating, very intimidating." Tr. 123. She stated that she interpreted his statements "[a]s a threat" and that she "then chose to call the police." Tr. 124.

{¶13} During cross-examination, the Defense indicated that J.B. had reported to the police that Gilbert said "[she] was asking for it" when J.B. testified at trial that Gilbert said "[she] [was] going to get what was coming to [her.]" Tr. 126. In response, J.B. stated that she "took [these statements] to be the same thing" and that "it was still a threat * * *." Tr. 126. She stated that this discrepancy did not constitute her changing her story. Tr. 127. J.B. also admitted that she is a recovering drug addict and that she used to purchase illegal drugs from Gilbert. Tr. 115, 130. She further stated that she was paid $75.00 by the police to participate in this controlled buy. Tr. 139.

{¶14} Officer Mark Brunson ("Officer Brunson"), who works for the Sidney Police Department, then testified that he was the person tasked with investigating the phone call that Gilbert made to J.B. Tr. 107, 146. Regarding J.B.'s earlier testimony, Officer Brunson stated that "[t]he only little bit of discrepancy there was

* * * she told me that [Gilbert] told her that she was asking for it * * *." Tr. 146. He stated that, other than this statement, J.B.'s testimony was the same as what she reported to him. Tr. 147. He further testified that he verified that the phone number in J.B.'s phone records was, in fact, Gilbert's phone number. Tr. 148.

{¶15} The timing, tone, and content of Gilbert's phone call indicate that his statements were threats. First, Gilbert called J.B. within one day of the State disclosing her identity as the confidential informant to the Defense. This timing indicates that Gilbert's call was connected to the pending jury trial in which J.B. was a witness. Further, J.B. stated that Gilbert was angry, telling her he was "f***ing p***ed off." Tr. 123. He also said that it was her fault that "he had lost everything." Tr. 123. J.B. testified that she felt threatened and that Gilbert's tone was "very intimidating." Tr. 123-124. *See State v. Zylko*, 8th Dist. Cuyahoga No. 89949, 2008-Ohio-3032, ¶ 39.

{¶16} J.B. also testified that Gilbert told her that she "would get what was coming to [her] * * *." Tr. 123. While Gilbert argues that this is a general statement, a defendant does not need to make a specific threat to violate R.C. 2921.05(A). *See State v. Ott*, 11th Dist. Portage No. 2007-P-0093, 2008-Ohio-4049, ¶ 35 (upholding a conviction for witness intimidation even though "many of the [defendant's] threats were nonspecific * * *."); *Cress, supra*, at ¶ 37 (holding that indefinite threats can be more intimidating than definite threats); *State v. Jackson*, 12th Dist. Fayette No. CA2011-01-001, 2011-Ohio-5593, ¶ 48 (concluding that a defendant's statements

that he would "come see" a witness and that he was "gonna make sure we both know what happened" were "implied, indefinite threats" that were sufficient to establish a violation of R.C. 2921.04(B)(2)).

{¶17} J.B. also stated that Gilbert stated that he was "coming to Greenville," which is where she lived at that time. Tr. 123. Gilbert argues that going to Greenville was a lawful act and that this, therefore, could not be a threat. However, R.C. 2921.04(B)(2) prohibits unlawful *threats*. *See Cress, supra*, at ¶ 37. An unlawful threat to engage in otherwise lawful conduct may be a violation R.C. 2921.04(B)(2) if the conduct constitutes an "attempt to influence, intimidate, or hinder * * *" a witness. R.C. 2921.04(B)(2). *See Cress, supra*, at ¶ 37 (holding "a witness threatened with perfectly legal conduct * * * may be more intimidated than a witness threatened with illegal conduct * * *."). We also note that Gilbert told J.B. that she "would get what was coming to [her] * * *" in conjunction with telling her that he was "coming to Greenville." Tr. 123.

{¶18} Given the timing, tone, and content of Gilbert's statements, a reasonable finder of fact could determine that these statements were threats. After reviewing the evidence in the record and considering its weight, we conclude that the evidence in the record does not weigh heavily against Gilbert's conviction for intimidating a witness. Further, we do not find any evidence in the record that indicates that the jury lost its way and returned a verdict against the manifest weight of the evidence. Gilbert's first assignment of error is overruled.

*Second Assignment of Error*

**{¶19}** Gilbert asserts that he was denied his right to the effective assistance of counsel, alleging that his trial counsel did not raise the issue of a speedy trial violation before the trial court.

Legal Standard

**{¶20}** "Under Ohio law, 'a properly licensed attorney is presumed to carry out his duties in a competent manner.'" *State v. Beaver*, 3d Dist. Marion No. 9-17-37, 2018-Ohio-2438, ¶ 26, quoting *State v. Gee*, 3d Dist. Putnam No. 12-92-9, 1993 WL 270995 (July 22, 1993). For this reason, the appellant has the burden of proving that he or she was denied the right to the effective assistance of counsel. *State v. Smalley*, 3d Dist. Henry No. 7-18-30, 2019-Ohio-1572, ¶ 4, quoting *State v. Brown*, 3d Dist. Hancock No. 5-17-19, 2018-Ohio-899, ¶ 42. "In order to prove an ineffective assistance of counsel claim, the appellant must carry the burden of establishing (1) that his or her counsel's performance was deficient and (2) that this deficient performance prejudiced the defendant." *State v. McWay*, 3d Dist. Allen No. 1-17-42, 2018-Ohio-3618, ¶ 24, quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**{¶21}** In order to establish deficient performance, the appellant must demonstrate that trial "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *State v. Howton*, 3d Dist. Allen No. 1-16-35, 2017-Ohio-4349, ¶ 35, quoting

*Strickland* at 687. In order to establish prejudice, "the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Davis*, *supra*, at ¶ 36, quoting *State v. Bibbs*, 2016-Ohio-8396, 78 N.E.3d 343, ¶ 13 (3d Dist.). If the appellant does not establish one of these two prongs, the appellate court does not need to consider the facts of the case under the other prong of the test. *State v. Baker*, 3d Dist. Allen No. 1-17-61, 2018-Ohio-3431, ¶ 19, citing *State v. Walker*, 2016-Ohio-3499, 66 N.E.3d 349, ¶ 20 (3d Dist.).

**{¶22}** Further, "[a]ppellate review is strictly limited to the record on appeal." *State v. Johnson*, 1st Dist. Hamilton No. C-170612, 2019-Ohio-287, ¶ 21. Under App.R. 12(A)(2), the appellant is to "identify in the record the error on which the assignment of error is based * * *." App.R. 12(A)(2). "A claim of ineffective assistance of counsel cannot be asserted on direct appeal if it relies on matters outside the record." *State v. Harris*, 2d Dist. Montgomery No. 27179, 2017-Ohio-9052, ¶ 19. *See State v. Cooperrider*, 4 Ohio St.3d 226, 228, 448 N.E.2d 452, 454 (1983) (holding that "it is impossible to determine whether the attorney was ineffective in his representation of the appellant where the allegations of ineffectiveness are based on facts not appearing in the record.").

## Legal Analysis

**{¶23}** On appeal, Gilbert states that his trial had to occur before 270 days of speedy trial time had expired and alleges that 271 days of speedy trial time had

expired by the date of his jury trial. Appellant's Brief, 7. He then argues that his defense counsel was ineffective for failing to raise this issue before the trial court. In response, the State notes in its brief that Gilbert's speedy trial time relies on each of the seven days he spent in jail in December of 2018 counting as three days for speedy trial purposes. Appellee's Brief, 10. The State alleges that Gilbert was in jail for another charge at this time and that each day he spent in jail should, therefore, count only as one day for the purposes of calculating speedy trial time. *Id.*

{¶24} However, the record before this Court begins on April 25, 2019, which is when Gilbert was indicted for intimidating a witness and reindicted for trafficking in drugs. Doc. 1. The record does not contain the filings that were made prior to Gilbert's reindictment. Gilbert's brief references filings and events—his previous indictment, being released on his own recognizance, the Defense's motion for discovery, the State's response to discovery—that affect the calculation of speedy trial time but are not documented in the record before us.

{¶25} In the absence of the documents filed prior to April 25, 2019, we cannot determine whether Gilbert's speedy trial rights were violated in this case. *See State v. Madrigal*, 87 Ohio St.3d 378, 390, 721 N.E.2d 52, 65 (2000) (holding that resolving an issue in favor of the appellant in the absence of evidence in the record "would be purely speculative."); *State v. Thompson*, 8th Dist. Cuyahoga No. 79334, 2002-Ohio-5957, ¶ 13 (overruling a claim of ineffective assistance of counsel that alleged a speedy trial violation where the evidence in the record was

-12-

not sufficient to determine the issue). Since appellate review is limited to what is contained in the record, we must conclude that the appellant has not demonstrated, based on the evidence before this Court, that he was denied his right to the effective assistance of counsel.[1]    *State v. Neib*, 5th Dist. Stark No. 2001 CA 00349, 2002-Ohio-4666, ¶ 36. Gilbert's second assignment of error is overruled.

*Conclusion*

{¶26} Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of Shelby County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**SHAW, P.J. and PRESTON, J., concur.**

**/hls**

---

[1] This does not necessarily mean that there is no avenue left to raise this issue. "Although ineffective assistance of counsel ordinarily should be raised on direct appeal, res judicata does not bar a defendant from raising this issue in a petition for post conviction relief if the claim is based on evidence outside the record. This principle applies even when the issue of ineffective assistance of counsel was raised on direct appeal." (Citation omitted.) *State v. Jones*, 3d Dist. Defiance No. 4-07-02, 2007-Ohio-5624, fn. 5, citing *State v. Jones*, 8th Dist. Cuyahoga No. 83601, 2004-Ohio-3868, ¶ 6; *State v. Smith*, 17 Ohio St.3d 98, 101, 477 N.E.2d 1128, fn. 1 (1985).