OPINION
{¶ 1} Appellant, Daniel C. Ott, Jr. ("Ott"), appeals the judgment entered by the Portage County Court of Common Pleas. Ott received a three-year prison term for his conviction for retaliation.
 {¶ 2} On December 3, 2006, Ott was at the bar of an Applebee's restaurant in Brimfield, Ohio. At some point, Ott became involved in an altercation with another patron. Evidently, the other patron attacked Ott in the parking lot of the restaurant. The fight did not last long, as the other patron's friends quickly intervened and broke it up. *Page 2 
As a result of the altercation, Ott called 9-1-1. Officer Christopher Adkins of the Brimfield Police Department was dispatched to the restaurant.
 {¶ 3} During his 9-1-1 call, Ott made several comments suggesting that he was a police officer. For example, he told the other group of individuals to stay on the sidewalk or they would be arrested, he referred to himself as "Unit 01," he referenced the license plate of a vehicle using phonetic alphabet codes, he referred to the parking lot of the restaurant as a crime scene, and he requested "backup." During his subsequent investigation, Officer Adkins discovered that Ott had made direct representations that he was a police officer.
 {¶ 4} Officer Adkins cited the other patron for disorderly conduct for his role in the fight. Ott was not cited for the fight. However, a few days after the incident, Ott was charged with impersonating a police officer for the representations he made during the incident.
 {¶ 5} In January 2007, Ott discovered he had a warrant for his arrest for the charge of impersonating a police officer.
 {¶ 6} On January 10, 2007, Ott called the Brimfield police station, and Officer Daniel Rafferty answered the phone. Ott requested to speak to Officer Adkins. Although Officer Adkins was at the station, he did not want to speak with Ott at that time. Therefore, Officer Rafferty offered to transfer Ott's call to Officer Adkins' voice mailbox, so Ott could leave a message. Ott was not happy with this solution, and he asked where Officer Adkins lived. Also, Ott told Officer Rafferty that he would take his job. Further, Ott told Officer Rafferty that he knew where Chief David Blough lived. *Page 3 
 {¶ 7} Moments after the initial telephone call ended, Ott called the Brimfield police station a second time, and Officer Rafferty answered this call as well. After informing Ott that Officer Adkins was not available to talk to him and Chief Blough was not at the station, Officer Rafferty offered to let Ott speak with Sergeant William Reece. Ott requested that Sergeant Reece drop the impersonating a police officer charge. He also told Sergeant Reece that he knew where Officer Adkins and Chief Blough lived. Ott also asked Sergeant Reece for other officers' license plate numbers so he could find out where they lived and indicated that, if the plate numbers were not provided, he would wait outside the police station for the officers to leave. Also, Ott told Sergeant Reece that he would go to Chief Blough's, Sergeant Reece's, and Officer Adkins' houses, that he would find the officers, and that he would "take care" of the situation. Eventually, Ott hung up on Sergeant Reece. Sergeant Reece called Chief Blough at home and informed him about the calls.
 {¶ 8} The next day, January 11, 2007, Ott called the Brimfield police station and spoke to Chief Blough. This conversation lasted 47 minutes and was recorded. Ott told Chief Blough that he was aware of prior police reports concerning disputes with Chief Blough and his ex-wife and another incident between the Chief and his current wife. Ott provided Chief Blough with the exact dates and addresses of these incidents. Further, Ott informed Chief Blough of the year the Chief filed for bankruptcy. Ott explained to Chief Blough his reasons for conducting the background check on Chief Blough: "I don't screw around. When someone comes after me, I go after them ten times. And so, that's why I have done a complete background check on you. Your bankruptcy and all this stuff." *Page 4 
 {¶ 9} Ott also threatened to go after the state's witnesses, including Officer Adkins, and stated he was going to go after them civilly. Specifically, he stated "[e]ven if the charges [are] dropped. I am going after that department. I am going after each and every officer, and I am going after every single witness. And if some stupid jury would find me guilty, I'll go after them. Because you've screwed with the wrong guy."
 {¶ 10} Ott also informed Chief Blough that there were housing violations on two properties owned by Chief Blough. Ott told Chief Blough of the specific violations at the houses and told him that inspectors were at the properties at 1:30 p.m. on that day. In fact, Chief Blough received housing violations from the city of Akron, which were anonymously reported. After being asked why he was looking up property records and initiating home inspections of Chief Blough's residences, Ott replied, "[w]ell you're screwing with my life, so I'm screwing with yours."
 {¶ 11} Finally, towards the end of the conversation, the following colloquy occurred between Chief Blough and Ott:
 {¶ 12} "CHIEF BLOUGH: You have to be forewarned, please, I am imploring you don't come near our personal residences. This is a job. This is what we do for a living.
 {¶ 13} "OTT: Keep in mind that I will implore you, don't come to my residences."
 {¶ 14} Chief Blough responded that if any of the officers entered Ott's property, it would be to serve the arrest warrant. Thereafter, Ott responded, "this is my personal life, so what's fair is fair. So, if you come after me personally, I'm coming after you personally. If your department comes after me personally, I'm coming after the department." *Page 5 
 {¶ 15} After the phone call between Ott and Chief Blough, Brimfield Township received a request for information from "Otter Companies — Division of 1401" pursuant to the Freedom of Information Act. 1401 is Chief Blough's badge number. Chief Blough discovered that "1401" has been registered as a limited liability company created by Ott and is registered with the Ohio Secretary of State. This request sought various records pertaining to Officer Adkins, Sergeant Reece, and Chief Blough. The request listed Chief Blough's social security number next to his name on six occasions.
 {¶ 16} Ott was indicted on four counts, including two counts of intimidation, in violation of R.C. 2921.03 and third-degree felonies, and two counts of retaliation, in violation of R.C. 2921.05(A) and third-degree felonies.[1] One retaliation count and one intimidation count related to Officer Adkins. The remaining counts of retaliation and intimidation concerned Ott's phone call on January 11, 2007 to Chief Blough.
 {¶ 17} Ott pled not guilty to the charges against him. Ott waived his right to a jury trial, and the matter proceeded to a bench trial. Officer Rafferty, Officer Adkins, Sergeant Reece, and Chief Blough testified for the state. In addition, a copy of the recording of the phone call between Chief Blough and Ott was admitted into evidence and played for the court. At the conclusion of the state's case-in-chief, Ott moved for acquittal pursuant to Crim. R. 29. Since Ott did not present any witnesses and the matter was a bench trial, the trial court reserved ruling on Ott's motion for acquittal.
 {¶ 18} The trial court found Ott not guilty of the counts relating to Officer Adkins. Also, the trial court found Ott not guilty of the intimidation count pertaining to Chief Blough. However, the trial court found Ott guilty of the retaliation count pertaining to *Page 6 
Chief Blough. The trial court sentenced Ott to a three-year prison term for his conviction for retaliation.
 {¶ 19} Ott moved the trial court to stay his sentence pending appeal. The trial court denied his motion. On appeal, Ott filed a motion with this court to stay his sentence pending appeal, which this court denied.
 {¶ 20} Ott raises the following assignment of error:
 {¶ 21} "Appellant's conviction for retaliation was based upon insufficient evidence as a matter of law."
 {¶ 22} A trial court shall grant a motion for acquittal when there is insufficient evidence to sustain a conviction. Crim. R. 29(A). When determining whether there is sufficient evidence presented to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia
(1979), 443 U.S. 307.
 {¶ 23} Ott was charged with retaliation in violation of R.C. 2921.05(A), which provides:
 {¶ 24} "No person, purposely and by force or by unlawful threat of harm to any person or property, shall retaliate against a public servant, a party official, or an attorney or witness who was involved in a civil or criminal action or proceeding because the public servant, party official, attorney, or witness discharged the duties of the public servant, party official, attorney, or witness." *Page 7 
 {¶ 25} Initially, we will address whether the state presented sufficient evidence regarding an "unlawful threat of harm." In a case involving a violation of R.C. 2921.04(B), the Supreme Court of Ohio addressed the meaning of this language, which is verbatim to the language in R.C. 2921.05(A). State v. Cress, 112 Ohio St.3d 72,2006-Ohio-6501. The court held "that the statutory language in R.C. 2921.04(B), proscribing intimidation by an `unlawful threat of harm,' is satisfied only when the very making of the threat is itself unlawful because it violates established criminal or civil law." Id. at ¶ 42. The court held that the threat itself, not the threatened conduct, must be unlawful. Id. at ¶ 38.
 {¶ 26} The Supreme Court of Ohio suggested that, to be unlawful, the threat itself must violate a predicate offense. Id. at ¶ 43. However, the court did not hold that the "predicate offense" must be identified in the indictment or otherwise specified by the state. We believe the failure to designate a predicate offense is not fatal in the case at bar. The trial court, serving as the trier of fact, could decide whether the threats made by Ott were lawful. Minimal research quickly reveals that a trier of fact could conclude that Ott's threats were unlawful, since the state presented evidence that Ott's threats violated Ohio's disorderly conduct and telecommunications harassment statutes.
 {¶ 27} R.C. 2917.11, Ohio's disorderly conduct statute provides, in part:
 {¶ 28} "(A) No person shall recklessly cause inconvenience, annoyance, or alarm to another by doing any of the following:
 {¶ 29} "(1) Engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior[.]" *Page 8 
 {¶ 30} There was evidence presented that Ott caused inconvenience, annoyance, and/or alarm to Chief Blough. We note Chief Blough testified that, as a result of Ott's telephone call, he removed his youngest children from school for more than one week. A trier of fact could find that removing one's young children from school out of concern for their safety qualifies as being inconvenienced, annoyed, and/or alarmed.
 {¶ 31} R.C. 2917.21, Ohio's telecommunications harassment statute provides, in part:
 {¶ 32} "(B) No person shall make or cause to be made a telecommunication, or permit a telecommunication to be made from a telecommunications device under the person's control, with purpose to abuse, threaten, or harass another person."
 {¶ 33} Ott called Chief Blough on January 11, 2007. During that phone call, he threatened action against Chief Blough. Since these threats were made via the telephone, a trier of fact could find that they violate R.C. 2917.21 and, thus, are unlawful.
 {¶ 34} Next, we will address whether there was evidence presented that showed Ott threatened harm to a person or property.
 {¶ 35} We note that many of Ott's threats were nonspecific, such as "you've screwed with the wrong guy." The Supreme Court of Ohio has noted that "[t]he most intimidating threat of all may be an indefinite one (`You'll be sorry')." State v. Cress, 112 Ohio St.3d 72, 2006-Ohio-6501, at ¶ 37. Ott made repeated, indefinite threats to various officers during his phone calls on January 10-11, 2007. At various times, Ott threatened to sue the officers, threatened to investigate prior conduct of the officers, threatened to *Page 9 
wait outside the police station for the officers to leave, and threatened to show up at the officers' personal residences. Moreover, Ott provided Chief Blough with specific information, including the names of Chief Blough's wife and ex-wife and his address, indicating that it was possible for Ott to carry out his threats. The various threats cannot be viewed in isolation. There were multiple threats made to multiple officers during three separate phone calls. Many of the threats occurred in the final phone call with Chief Blough, which lasted 47 minutes. When viewed in their totality, we believe a trier of fact could conclude that Ott's numerous, nonspecific threats were viable and threatened harm to persons or property.
 {¶ 36} In addition to the nonspecific threats, Ott made a specific threat about entering the officers' properties. During the January 11, 2007 phone conversation, Chief Blough instructed Ott to stay off the officers' properties. Ott responded that the officers should stay off his property. Chief Blough stated that if any officers entered Ott's property, it would be to serve the outstanding arrest warrant. Ott responded by saying "what's fair is fair."
 {¶ 37} Further, the statute only requires that the offender threaten "harm," it does not require that the offender threaten physical harm. Ott created a limited liability company containing the numbers of Chief Blough's badge number. Then, through this limited liability company, Ott submitted a Freedom of Information Act request, wherein he included Chief Blough's social security number six different times. This action could be viewed as a threat of economic harm, as one could conclude that Ott was taunting Chief Blough with the fact he knew his social security number and making an implicit threat that he would use Chief Blough's social security number in an unauthorized way. *Page 10 
 {¶ 38} Based on the foregoing, the state presented sufficient evidence that Ott threatened harm to a person or property.
 {¶ 39} Ott argues that Chief Blough did not discharge his duties in his capacity as a public servant. We disagree. Ott contends that Chief Blough stated "this is not my case" during the phone call and that Officer Adkins filed the charges. However, the following colloquy occurred during the direct examination of Chief Blough:
 {¶ 40} "Q. Did you participate in any decision making in terms of whether or not Mr. Ott would be charged with impersonating a Police Officer?
 {¶ 41} "A. I consulted with Officer Adkins about that and he had also consulted with the Prosecutor's office. I told him I believed the charges were warranted, absolutely."
 {¶ 42} This evidence suggests that Chief Blough played a critical role in the impersonating a police officer charge being filed against Ott.
 {¶ 43} Prior to oral argument, Ott filed a "notice of additional authority," wherein he asks us to follow the Fourth Appellate District's decision in State v. Johnson, 4th Dist. No. 07CA3158, 2008-Ohio-1369. InJohnson, the Fourth District reversed the defendant's retaliation conviction, finding that there was insufficient evidence to support the conviction. Id. at ¶ 22. The court concluded that, due to the past-tense language in R.C. 2921.05, the underlying criminal matter must have concluded prior to the action constituting the retaliation offense. Id. at ¶ 18. Specifically, the court held "the State had to show that the underlying OVI criminal action was no longer pending at the time of the alleged retaliation." Id. Essentially, the Fourth District has added an element to the *Page 11 
offense of retaliation, in that the underlying action or proceeding must be terminated prior to the offender's conduct. We disagree with this analysis.
 {¶ 44} First, we note that there are several Ohio appellate cases in which courts have upheld retaliation convictions when the offense was committed prior to the conclusion of the underlying action.
 {¶ 45} This court addressed the sufficiency of the evidence concerning a retaliation conviction in the case of State v. Miller, 11th Dist. No. 2004-P-0049, 2005-Ohio-6708, at ¶ 66-78. In Miller, the defendant was in arrears in his child support obligations. Id. at ¶ 2. In addition, the defendant reported to the Portage County Child Support Enforcement Agency ("CSEA") that he was unemployed. The defendant had an ongoing dispute with his neighbor, Sylvia. Id. Sylvia worked as a supervisor for CSEA. Sylvia noticed the defendant drive a company vehicle and park the vehicle in his driveway. Id. Suspecting that the defendant was underreporting his income, Sylvia alerted her supervisor at CSEA about the defendant's actions. Id. at ¶ 3. An investigation ensued. Id. In holding there was sufficient evidence to support the appellant's retaliation conviction, this court held, "Sylvia testified that Miller became aware of her part in the commencement of the CSEA investigation and, thus, escalated his recurring abusive and intimidating behavior against her and her family." Id. at ¶ 76. It is important to note that many of the incidents constituting the retaliation conviction occurred during the "time when the CSEA investigation was being conducted." Id. at
 {¶ 46} The Fifth Appellate District has addressed the issue of a retaliation conviction in the context of a sufficiency of the evidence analysis. State v. Nash (Apr. 3, *Page 12 
2000), 5th Dist. No. 1999CA00295, 2000 Ohio App. LEXIS 1490, at *3-8. InNash, the appellant's brother was on trial for an unrelated offense. Id. at *1-2. A police officer testified in the brother's criminal trial. Id. Following his testimony, the officer remained in the courthouse in case he was needed as a rebuttal witness. Id. During this time, the appellant stated "`F [the officer] I will kill that B.'" Id. at *5. At that time, the police officer turned and walked toward the appellant. Id. In response, the appellant stood up and agreed with his friends that they should "rush" the officer. Id. at *6. Since the appellant's actions against the police officer occurred during the brother's trial, it is apparent that the brother's trial had not concluded prior to the appellant's conduct. However, the Fifth District held that there was sufficient evidence to support the appellant's conviction for retaliation. Id. at *8.
 {¶ 47} In another Fifth District case, State v. Goodwin, 5th Dist. No. 2003 CA 0074, 2004-Ohio-2482, the court again found there was sufficient evidence to support a retaliation conviction. Id. at ¶ 28. InGoodwin, the appellant, who was in jail, met with his attorney, who presented the appellant with documents for his upcoming criminal trial, including a witness statement from an adverse witness. Id. at ¶ 5. The adverse witness was also an inmate in the same jail as the appellant, and, immediately after meeting with his attorney, the appellant confronted the adverse witness and ultimately struck him. Id. at ¶ 7. At the time of the appellant's retaliatory conduct, the underlying criminal action was not concluded, as the appellant's attorney was still reviewing discovery. Id. at ¶ 5. However, the Fifth District held that there was sufficient evidence to support the appellant's conviction for retaliation. Id. at ¶ 26-28. *Page 13 
 {¶ 48} In Miller, Nash, and Goodwin, the underlying proceedings or actions were not concluded at the time the offenders engaged in the retaliatory conduct. State v. Miller, 2005-Ohio-6708, at ¶ 5, 66-78;State v. Nash, 2000 Ohio App. LEXIS 1490, at *1-8; State v.Goodwin, 2004-Ohio-2482, at ¶ 5-7. Under the Fourth District's analysis in State v. Johnson, none of these convictions were proper. However, for the following reasons, we disagree with the Fourth District's analysis and follow these cases.
 {¶ 49} Again, Ohio's retaliation statute is R.C. 2921.05(A), which provides:
 {¶ 50} "No person, purposely and by force or by unlawful threat of harm to any person or property, shall retaliate against a public servant, a party official, or an attorney or witness who was involved in a civil or criminal action or proceeding because the public servant, party official, attorney, or witness discharged the duties of the public servant, party official, attorney, or witness."
 {¶ 51} We believe the legislature's use of the word "was" applies to the public servant's, party official's, attorney's, or witness'involvement in the civil or criminal action. We do not believe, as the Fourth District has held, that it applies to the entire underlying proceeding. See State v. Johnson, 2008-Ohio-1369, at ¶ 18. Moreover, the intent of the legislature can be discerned from the remaining language, which provides that the designated individual in the statute "discharged the duties of the public servant, party official, attorney, or witness." The use of the word "discharged" suggests that the legislature intended the statute to apply following the requisite individual's discharge of some or all of that person's duties.
 {¶ 52} The Fourth District quoted the Second Appellate District for the proposition that any action prior to a judicial decision would be intimidation, while any action *Page 14 
subsequent to a judicial decision would be retaliation. State v.Johnson, 2008-Ohio-1369, at ¶ 20, quoting State v. Lambert (June 5, 1998), 2d Dist. No. 16667, 1998 Ohio App. LEXIS 2383, at *9-10. Thus, under that analysis, an individual who took action against a witness who testified against him on the day after such testimony was given, but prior to a final judgment in the criminal case being issued, would not be guilty of retaliation, because the underlying case was not final, but instead would be guilty of intimidation. This is despite the fact that the individual clearly "retaliated" against the witness because the witness testified against him and did not take action against the witness to prevent him from testifying.
 {¶ 53} We believe the better approach is to look at the underlying nature of the offender's conduct. If the evidence shows that the offender attempted to influence, intimidate, or hinder a designated individual in the discharge of that person's duty, then the offender is guilty of intimidation in violation of R.C. 2921.03. If, however, the evidence demonstrates the offender's actions are in response to the designated individual already discharging some or all of his or her duties, then the offender is guilty of retaliation in violation of R.C. 2921.05.
 {¶ 54} In this matter, the state charged Ott with both intimidation and retaliation. Presumably, this was because Ott's comments indicated (1) that he had taken action against Chief Blough as a result of Chief Blough discharging his official duties and (2) that he was threatening to take additional action if Chief Blough did not have the underlying charges dismissed. At the time of Ott's comments, charges had been filed against him for the underlying incident at Applebee's. Thus, Chief Blough's involvement *Page 15 
in the matter had concluded at the time of the phone calls on January 10-11, 2007. Accordingly, the trial court found Ott guilty of retaliation but not guilty of intimidation.
 {¶ 55} The evidence presented at trial, when viewed in a light most favorable to the state, was sufficient for a trier of fact to conclude that Ott committed the offense of retaliation beyond a reasonable doubt.
 {¶ 56} Ott's assignment of error is without merit.
 {¶ 57} The judgment of the trial court is affirmed.
CYNTHIA WESTCOTT RICE, J., MARY JANE TRAPP, J., concur.
[1] The charge of impersonating a police officer was not included in the indictment and is not part of this case. *Page 1