[Cite as *State v. Bates*, 2022-Ohio-3150.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Earle E. Wise, Jr., P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| DENNIS BATES | : | Case No. 22CA00001 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Court of Common
Pleas, Case No.21CR02-0026


JUDGMENT:        Affirmed


DATE OF JUDGMENT:        September 8, 2022


APPEARANCES:

For Plaintiff-Appellee        For Defendant-Appellant

CHARLES T. MCCONVILLE        JON KLEIN
NICOLE E. DERR        101 Heather Lane
117 E. High Street        Powell, OH  43065
Suite 234
Mount Vernon, OH  43050

*Wise, Earle, P.J.*

{¶ 1}  Defendant-Appellant Dennis Bates appeals the December 22, 2021 judgment of conviction and sentence of the Knox County Court of Common Pleas. Plaintiff-Appellee is the state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2}  Richard McElvain owns a property in Mount Vernon, Ohio which he rented to appellant herein. Appellant ran his business, Pro Fitness USA out of McElvain's building.

{¶ 3}  In early December, 2020, after appellant failed to pay his rent, McElvain contacted Attorney Kim Rose of Critchfield, Critchfield, and Johnson (herein Critchfield) to begin eviction proceedings. McElvain forwarded two messages to Rose that he had received from appellant after he attempted to collect rent. The first said "your move." The second was a response from McElvain asking what that meant to which appellant replied "what will your legacy be?"

{¶ 4}  Rose had his associate, Attorney Zachary Dimarco draft a complaint against appellant for forcible entry and detention. Dimarco filed the complaint in the Mount Vernon Municipal Court on December 28, 2020.

{¶ 5}  On December 30, 2020 appellant appeared at the Critchfield office on Gay Street in Mount Vernon. Brittany Bowman, a legal assistant with the firm was at the front desk. Appellant approached and asked to speak with Dimarco. Bowman knew Dimarco had no appointments scheduled and did not recognize appellant's name. Dimarco was on the phone and Bowman advised appellant she did not know how long he would be.

She requested he take a seat and sent Dimarco an email alerting him to appellant's presence. Appellant then became impatient when he was not immediately seen.

{¶ 6}   Attorney Kim Rose eventually came out to talk to appellant. Rose, a military veteran, noticed a strange wired device hanging around appellant's neck and believed it was some sort of improvised explosive device. Appellant was also wearing a mask with mob or mobster on it. Based on these observations Rose feared things would turn violent and feared for the safety of himself and Bowman. Rose heard appellant say something about war as he approached with his arms raised, a letter in one hand, as if to strike Rose. Appellant's voice was raised and aggressive as he told Rose he was recording their conversation. Rose hoped the device around appellant's neck was a recording device, but put himself in between appellant and Bowman to protect Bowman. When Rose asked appellant if he was threatening him appellant's demeanor instantly changed. He began to tremble. Rose took the opportunity to tell appellant to leave.

{¶ 7}   Rose took the letter from appellant intended for Dimarco and appellant left. The letter stated appellant had applied for covid relief funds but had not yet received any funds. He stated when he did, he would sent funds to Dimarco. The letter also contained non-sensical statements such as "I run the mob."

{¶ 8}   Also on December 30, 2021, Rose was made aware of a public post appellant made on Facebook. The post consisted of a still frame of Rose from the video and the caption "Got you bitch." Appellant tagged his location for the post as "The Columbus Bar Association."  Because Rose perceived appellant as a threat to himself and his coworkers, he began routinely checking appellant's Facebook page.

{¶ 9} On December 31, 2020, Rose sent a letter to appellant's business advising him he was not to return to the Critchfield office and if he did, police would be involved. Appellant responded by sending every attorney in the Critchfield office an email with a link to his Facebook page and the video he took of Rose. The email subject was "false accuser." Part of the email read "Let his days be few and let another take his office. Let his children be fatherless and his wife a widow."

{¶ 10} Even after appellant received Rose's letter, he continued to contact Rose via email. Rose directed appellant to address any concerns he had to his counsel and again asked him to refrain from contacting the firm or their client.

{¶ 11} On January 8, 2021 appellant appeared on the sidewalk in front of the Critchfield office with a sign that read "corrupt attorneys represent pedophiles." Appellant then publicly posted a picture of himself with the sign on Facebook with the caption "Tick Tock." Rose took that to be a reference to a bomb.

{¶ 12} On January 14, 2021, appellant made another public Facebook post which read "What is about to happen will shock the world, boom, boom, boom." Again Rose perceived the post as a threat of violence.

{¶ 13} Because Rose perceived appellant as a threat to the firm, he implemented additional security measures. He believed appellant intended to cause him or his associates physical harm.

{¶ 14} As a result of these events, on February 8, 2021, the Knox County Grand Jury returned an indictment charging appellant with one count of retaliation in violation of R.C. 2921.05(A), a felony of the third degree.

{¶ 15} Appellant pled not guilty to the charge and opted to proceed to a jury trail which began November 16, 2021.

{¶ 16} The state called four witnesses and elicited the above outlined facts.

{¶ 17} Appellant testified on his own behalf. He stated he went to the Critchfield office to give Dimarco a letter to give his landlord to let him know he was going to bring his rent current. He stated the device around his neck was his iPhone which he used to record his conversation with Rose. He testified he told Rose "You tell Dimarco I have strength in counsel" and that he was "Ready for war." He explained what he meant by this was that he was ready for a legal battle.

{¶ 18} As for the text communication between himself and his landlord, appellant testified "Your move" meant he did not have his rent payment. Appellant explained "what will your legacy be" was in reference to alleged conversations between himself and his landlord to "donate a portion of the building" to appellant's ministry. Appellant testified that when his landlord was not open to this proposal he sent a text reading "You serve God with your lips but your heart is far from Him."

{¶ 19} Appellant next explained he posted the still frame of Rose captioned "got you bitch" to "show others how corrupt Kim Rose is." He further stated he tagged himself at the Columbus Bar Association when he was not actually there because "a guy like that should be reported to the bar." In the same vein, he stated he sent a copy of the video of Rose to everyone at Critchfield "to let them see exactly the kind of corrupt ways that he was trying to corner me into, you know, with this video." Appellant testified the portion of the email suggesting Rose's children should be fatherless and his wife a widow was a

"prayer against your enemies, people who accuse you falsely." He told the jury this represented a request for God to take those actions.

{¶ 20} Appellant admitted he ignored the letter from Rose asking that he refrain from contacting him by sending one or two emails after he received the letter. He justified this by explaining he was not represented by counsel at the time.

{¶ 21} Appellant testified his demonstration in front of the Critchfield office with the sign reading "corrupt attorneys protect pedophiles" had nothing to do with the eviction. Instead, he explained it was in reference to the fact that Rose is the president of the Ariel Foundation Conservancy which is a local park conservancy. Appellant explained "there's symbols in that park that have me concerned about pedophilia." Appellant stated he publicly posted a photo of himself with the sign on Facebook with the caption "Tick Tock" not in reference to a bomb, but rather in reference to it being a "matter of time before people that are involved in pedophilia get caught." He further explained that he got the phrase "Tick Tock" online as it is used in videos he watches that involve investigating and uncovering pedophilia, child trafficking, and satanic human sacrifice.

{¶ 22} As for his public Facebook post declaring "What is about to happen will shock the world, boom, boom, boom," appellant again testified this was not in reference to a bomb, but rather " truth that's coming out, truth bombs." Again, appellant stated this statement had something to do with pedophilia and human trafficking.

{¶ 23} After hearing all the evidence and deliberating, the jury found appellant guilty as charged. He was subsequently sentenced to two years incarceration.

{¶ 24} Appellant timely filed an appeal and the matter is now before this court for consideration. He raises two assignments of error as follow:

I

{¶ 25} "THE EVIDENCE IS INSUFFICIENT TO SUPPORT THE APPELLANTS RETALIATION CONVICTION."

II

{¶ 26} "APPELLANT'S CONVICTION FOR RETALIATION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I, II

{¶ 27} In his first and second assignments of error, appellant makes the same argument.[1] Specifically, appellant argues his conviction for retaliation is not supported by sufficient evidence because the retaliation statute applies only to conduct which occurs after a judgment has been rendered. We disagree.

Sufficiency and Manifest Weight

{¶ 28} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99

---

[1] Although appellant states his conviction is against the manifest weight of the evidence, he makes identical arguments in his first and second assignments of error, failing to make any manifest weight argument in his second assignment of error.

S.Ct. 2781, 61 L.Ed.2d 560 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).  See also, *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

Retaliation

{¶ 29} Appellant was charged with retaliation pursuant to R.C. 2921.05(A). That section states in relevant part "No person, purposely and by force or by unlawful threat of harm to any person or property, shall retaliate against * * * an attorney or witness who was involved in a civil or criminal action or proceeding because the * * * attorney * * * discharged the duties of the * * *attorney * * *.

Appellant's Argument

{¶ 30} Appellant argues that because nearly all of the conduct alleged took place before the eviction was complete, the proper charge was intimidation, not retaliation. Based on this premise, he argues the state failed to produce sufficient evidence to support a conviction for retaliation. We disagree.

{¶ 31} We first note that on multiple occasions this court has affirmed convictions for retaliation in cases where the offense was committed before the conclusion of any underlying action. See *State v. Nash*, 5th Dist. No.1999CA00295, 2000 WL 502675 (Apr.

3, 2000) *3; *State v. Goodwin,* 5th Dist. No.2003 CA 0074, 2004-Ohio-2482, ¶ 26-28; *State v. Matthews*, 5th Dist. Fairfield No. 12-CA-35, 2013-Ohio-2183, ¶ 9-15.

{¶ 32} Next, in support of his argument, appellant cites *State v. Johnson*, 4th Dist. Scioto No. 07CA3158, 2008-Ohio-1369. In that matter, the Fourth District found any action before a judicial decision is intimidation, while any action after a judicial decision is retaliation. The *Johnson* court based this conclusion on the past-tense language in R.C. 2921.05, specifically the use of "was involved." *Id.* at ¶ 18.

{¶ 33} The reasoning in *Johnson*, however, has been rejected by the Eleventh District in *State v. Ott*, 11th Dist. No. 2007-P-0093, 2008-Ohio-4049. The *Ott* court addressed the past-tense language at ¶ 51:

> We believe the legislature's use of the word "was" applies to the public servant's, party official's, attorney's, or witness' involvement in the civil or criminal action. We do not believe, as the Fourth District has held, that it applies to the entire underlying proceeding. See *State v. Johnson*, 2008-Ohio-1369, at ¶ 18. Moreover, the intent of the legislature can be discerned from the remaining language, which provides that the designated individual in the statute "discharged the duties of the public servant, party official, attorney, or witness." The use of the word "discharged" suggests that the legislature intended the statute to apply following the requisite individual's discharge of some or all of that person's duties.

{¶ 34} The *Ott* court went on to find:

> We believe the better approach is to look at the underlying nature of the offender's conduct. If the evidence shows that the offender attempted to influence, intimidate, or hinder a designated individual in the discharge of that person's duty, then the offender is guilty of intimidation in violation of R.C. 2921.03. If, however, the evidence demonstrates the offender's actions are in response to the designated individual already discharging some or all of his or her duties, then the offender is guilty of retaliation in violation of R.C. 2921.05.

{¶ 35} We agree with the findings of the *Ott* court. Applied to the instant matter, the evidence demonstrated appellant acted in response to an eviction proceeding filed against him by Dimarco and handled by Rose. Dimarco and Rose, by virtue of filing the eviction, had discharged some of their duties to their client when appellant engaged in his disorderly and intimidating behavior. We find this evidence sufficient to support appellant's conviction for retaliation.

{¶ 36} For the forgoing reasons, appellant's first and second assignments of error are overruled.

{¶ 37} The judgment of the Knox County Court of Common Pleas is affirmed.


By Wise, Earle, P.J.

Wise, John, J. and

Baldwin, J. concur.



EEW/rw