[Cite as *State v. Lauck*, 2023-Ohio-1433.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    v.

RONALD DEAN LAUCK,

    DEFENDANT-APPELLANT.

CASE NO. 5-22-07

O P I N I O N

Appeal from Hancock County Common Pleas Court
Trial Court No. 2021-CR-00249

Judgment Affirmed

Date of Decision:  May 1, 2023

APPEARANCES:

    *Karin L. Coble* for Appellant

    *Phillip A. Riegle* for Appellee

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Ronald D. Lauck ("Lauck") brings this appeal from the judgment of the Court of Common Pleas of Hancock County convicting him of one count of intimidation. On appeal, Lauck claims that the judgment is not supported by sufficient evidence and is against the manifest weight of the evidence. For the reasons set forth below, the judgment is affirmed.

{¶2} On August 23, 2020, officers were dispatched to Lauck's home after a report of an altercation between Lauck's son, Jase, and his girlfriend. Deputy Justin Ritter ("Ritter") was the first on the scene and after speaking with Lauck and the victim, began to look for Jase. At that time, Lauck was "very cordial". Tr. 114. Ritter was informed that Jase had run into the cornfield. Multiple officers began searching the area for Jase and Ritter returned to the area to speak with the alleged victim and to see if Jase returned.

{¶3} While conducting the investigation, Ritter noticed that Lauck had become intoxicated and more argumentative. The interactions between the two became more hostile which resulted in Ritter telling Lauck to stay back and to stop interrupting the investigation. At one point, Lauck told his daughter to get rid of Ritter. Lauck went to the garage and came out on an ATV, driving it at a "rapid speed" towards where Ritter was standing. Ritter interpreted this as a possible threat, stepped closer to the tree, and "dropped the hood retention of [his] holster."

Tr. 129. Ritter instructed Lauck to get off the ATV and Lauck complied. Ritter then instructed Lauck to stay on the front porch to not interrupt the investigation.

{¶4} A few minutes later, Ritter heard a noise inside the garage and saw Lauck standing towards the rear of it. Ritter started walking to the garage to see what Lauck was doing. As he approached, Ritter saw that Lauck was holding a shotgun. Ritter reported that Lauck had a firearm and then sought cover. While moving towards cover, Ritter heard the shotgun being racked. Then Ritter heard the shotgun being fired. Both Ritter and Deputy Kris Otto ("Otto") reported "shots fired". Once Ritter was in a position of cover, he pulled his duty weapon and aimed towards the garage. Ritter saw Lauck with the shotgun and heard him racking the shotgun again. Ritter saw that Lauck had the gun in a "high-ready position", and, fearing for his life, fired two shots towards Lauck. Ritter then reported that Lauck had fired one shot and he had fired two shots. Once Ritter had fired towards Lauck, Lauck dropped the shotgun and Ritter commanded him to walk towards him.

{¶5} By this time Otto had arrived on the scene and saw Lauck standing in the drive with his hands up and the shotgun lying on the ground. Otto also began yelling commands for Lauck to turn away, keep his hands up, and get on the ground. Otto then tackled Lauck to the ground. Lauck kept repeating that he did not mean to shoot the gun. Otto noted that Lauck appeared intoxicated and Lauck admitted to having been drinking.

{¶6} On July 6, 2021, the Hancock County Grand Jury indicted Lauck on one count of felonious assault in violation of R.C. 2903.11(A)(2), a felony of the first degree, and one count of intimidation in violation of R.C. 2921.03(A), a felony of the third degree. Both counts contained firearm specifications. A bench trial was held from February 14-16, 2022. On March 2, 2022, the trial court held a hearing to announce the verdicts. The trial court found Lauck not guilty of the felonious assault and the firearm specification. The trial court found Lauck guilty of intimidation and the firearm specification.

{¶7} On March 29, 2022, the trial court conducted a sentencing hearing. The trial court then sentenced Lauck to a three-year mandatory prison term for the firearm specification and a twenty-four month prison term to be served consecutive to the mandatory term.[1] An appeal was filed from this judgment. Doc. 117. On appeal, Lauck raises the following assignment of error.

> **[Lauck's] conviction for intimidation is unsupported by sufficient evidence in violation of the Due Process Clauses of the U.S. Constitution and the Ohio Constitution and is against the manifest weight of the evidence.**

*Sufficiency of the Evidence*

{¶8} In his sole assignment of error, Lauck argues that his conviction is unsupported by sufficient evidence.

---

[1] The trial court noted that it was aware of this court's "holding in *State v. Wolfe*, 2022-Ohio-96, but respectfully disagrees with its conclusion and application of O.R.C. §2929.13(F)(8)." The trial court then determined that the 24 month prison term was not a mandatory term."

> A sufficiency analysis "'determine[s] whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' " *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), quoting Black's Law Dictionary 1433 (6th Ed.1990). If the state fails to present sufficient evidence on every element of an offense, then convicting a defendant for that offense violates the defendant's right to due process of law. *Id*. at 386-387, 678 N.E.2d 541; see also *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

*State v. Messenger,* ___ Ohio St.3d ___, 2022-Ohio-4562, ¶ 13. The question of whether the evidence presented at trial is legally sufficient to support a verdict is a question of law and basically questions the adequacy of the evidence. *State v. Hulbert*, 3d Dist. Van Wert No. 15-19-07, 2021-Ohio-2298, ¶ 5.

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. * * * Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." * * * "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact."

*State v. Adkins*, 3d Dist. Allen No. 1-19-71, 2020-Ohio-6799, ¶ 37 *subsequently reversed on reconsideration on other grounds* (citations omitted).

**{¶9}** In this case, the trial court convicted Lauck of intimidation.

> A) No person, knowingly and by force, by unlawful threat of harm to any person or property, * * * shall attempt to influence, intimidate, or hinder a public servant, a party official, or an attorney or witness involved in a civil action or proceeding in the discharge of the

person's * * * duties of the public servant, party official, attorney, or witness.

R.C. 2921.03(A). Lauck argues that the State failed to present evidence that Lauck made an "unlawful threat of harm." The Supreme Court of Ohio has addressed the question of what satisfies the "unlawful threat of harm" requirement in *State v. Cress*. 112 Ohio St.3d 72, 2006-Ohio-6501, 858 N.E.2d 341. In *Cress*, the defendant was convicted of intimidation because he threatened a witness that if she did not recant her statements, he would take several actions. The Court determined that Cress made the following threats.

> [A] jury could conclude that [the list Cress made] indicated that Cress would (1) show child-protection authorities incriminating photographs of [the witness] using illicit drugs and/or depicting her nude, (2) provide access to [the witness'] basement to an appliance-rental company, apparently to recover a washing machine and dryer that were, by implication, [in the witness'] possession improperly, (3) provide unspecified information to another rental company about [the witness'] stereo and computer, (4) make her get rid of her pet dog and live-in babysitter because they were not permitted by the terms of the lease, (5) reveal to one of [the witness'] family members that his girlfriend was having an affair, and (6) no longer permit her to use his motor vehicle.

*Id*. at ¶ 10. The Court held that these actions were not sufficient to support a conviction for intimidation of a witness. "[T]he statutory language in R.C. 2921.04(B), proscribing intimidation by an 'unlawful threat of harm,' is satisfied only when the very making of the threat is itself unlawful because it violates established criminal or civil law." *Id*. at ¶ 42. For the State to obtain a conviction under the statute, the State must introduce evidence demonstrating the elements of

a predicate offense. *Id*. at ¶ 43. The Court then reversed the conviction because although Cress was charged with extortion, the jury returned a verdict of not guilty. *Id*. at footnote 2.

**{¶10}** Lauck argues on his appeal that the State in this case failed to present a predicate offense for the intimidation charge as he was found not guilty of the felonious assault charge and no other charges were presented to the trial court. However, this argument does not take into consideration that the Court in *Cress* did not require the predicate offense to be identified in the indictment or even specified by the State. *See State v. Armstrong*, 9th Dist. Summit No. 24479, 2009-Ohio-5941, ¶ 21 and *State v. Ott*, 11th Dist. Portage No 2007-P-0093, 2008-Ohio-4049, ¶ 26. The determination as to whether a threat is unlawful is left to the trial court, serving as the trier of fact, to determine. *Ott, supra*.

**{¶11}** In this case, the State did not specify what the predicate offense for the intimidation charge was. It may have been the felonious assault, but since there was a finding of not guilty, that cannot support the conviction for the intimidation charge. A review of the record does show that there was evidence presented of other offenses for which Lauck could have been charged. For example, R.C. 2923.15 provides that "no person, while under the influence of alcohol * * *, shall carry or use any firearm or dangerous ordnance." Anyone who uses a weapon while intoxicated could be convicted of a misdemeanor of the first degree. R.C. 2923.15(B). The evidence, viewed in a light most favorable to the State, also shows

that Lauck acted in a manner to hamper the ability of Ritter to conduct his investigation on multiple occasions and resulted in Ritter telling him to stay by the porch because of his interference. This could be construed as obstructing official business, a violation of R.C. 2921.31. Since the evidence, viewed in a light most favorable to the State, supports potential predicate offenses, the State met its burden of demonstrating the elements of the predicate offense.

*Manifest Weight of the Evidence*

{¶12} Lauck's second issue raised in the brief is that the conviction is against the manifest weight of the evidence.

> When reviewing a judgment to determine if it is against the manifest weight of the evidence, an appellate court "review[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Mendoza*, 137 Ohio App.3d 336, 738 N.E.2d 822 (2000). See, also, *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A new trial should be granted only in the exceptional case in which the evidence weighs heavily against conviction. *Thompkins* at 387, 678 N.E.2d 541. Although the appellate court acts as a "thirteenth juror," due deference to the findings made by the fact-finder must still be given. *State v. Moorer*, 3d Dist. 13–12–22, 2013-Ohio-650, 2013 WL 684735, ¶ 29.

*Hulbert, supra* at ¶ 23.

{¶13} Here, the record shows that the uncontradicted evidence was that for some reason, Lauck went from cordial and cooperative with Ritter to hostile and wanting Ritter to leave. The testimony of Ritter and Otto both indicated that Lauck

was intoxicated. Detective Sergeant Jason Seem ("Seem") testified that when he searched the home, he recovered an almost empty bottle of Jack Daniels and that he knew Lauck had been drinking that night. Seem also testified that Ritter had reported that Lauck was "highly 24" meaning that Lauck was very intoxicated before he was observed with the gun. The only person to testify who was present was Ritter. His testimony, as shown above, indicated that he repeatedly told Lauck not to interfere with the investigation and Lauck was not happy. No reasonable explanation was provided as to why Lauck went to the gunsafe, removed the gun, and was carrying it around. Otto testified that Lauck kept saying he did not mean to shoot the gun. The statute only requires that a threat be made, not that the defendant attempt to follow through on the threat. Thus, the fact that Lauck retrieved the firearm combined with the other activities, such as driving the ATV at high rate of speed towards Ritter in a threatening manner, provides evidence that Lauck was trying to intimidate Ritter into leaving the home. Likewise, the firing of the gun is not necessary for the firearm specification as the mere brandishing of the weapon is all that is necessary. The evidence in this case does not weigh heavily against conviction or indicate that a manifest miscarriage of justice occurred. Thus, the conviction is not against the manifest weight of the evidence.

*Intent*

**{¶14}** Finally, Lauck argues that the State failed to prove his intent to intimidate. The statute requires the State to prove that Lauck acted knowingly.

(B) A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(B).

{¶15} Lauck argues that he did not act knowingly because he was intoxicated and because he did not intend to fire the weapon. "Voluntary intoxication is not a defense, but where specific intent is a necessary element of the crime charged, the fact of intoxication may be shown to negate this element if the intoxication is such as to preclude the formation of such intent." *State v. Otte*, 74 Ohio St.3d 555, 564, 1996-Ohio-108, 660 N.E.2d 711. However, it only negates the intent if the defendant is "so intoxicated as to be mentally unable to intend anything". *State v. Jackson*, 32 Ohio St.2d 203, 206, 291 N.E.2d 432 (1972).

{¶16} Here, no evidence was presented to show Lauck was incapable of forming any intent or as to his actual level of intoxication. Lauck was capable of forming the intent to drive the ATV towards Ritter and to follow through with that action. He formed the intent to leave the porch where he was told to remain and followed through with that action. He formed the intent to enter the garage and to open the gun safe and followed through with that action. Even if we were to accept that he had no intent to fire the weapon, he clearly intended to retrieve it and carry

-10-

it out of the garage, which he did.  Given the evidence before us, the record does not support a conclusion that Lauck was so intoxicated as to be unable to form intent.

{¶17} Lauck also argues that he had no intent to fire the shotgun and it was an accidental discharge.  As discussed above, the firing of the shotgun is not a required element for an intimidation charge.  The mere brandishing of the weapon was enough to constitute an unlawful threat given the situation.  Thus, even if we were to agree that the discharge was accidental, the conviction for intimidation and the firearm specification would still be supported by the evidence.

{¶18} For the reasons set forth above, the assignment of error is overruled. Having found no errors prejudicial to the appellant in the particulars assigned and argued, the judgment of the Court of Common Pleas of Hancock County is affirmed.

*Judgment Affirmed*

**WALDICK and ZIMMERMAN, J.J., concur.**

**/hls**